GEORGE W. WOOLSEY, ADMINISTRATOR, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY.

FILED MARCH 21, 1894.   No. 4882.

1. **Carriers: PASSENGERS.** A person riding on the locomotive engine of a freight train by agreement with the fireman of such engine to shovel coal for the privilege of riding, such person being on such train without the knowledge or consent of the conductor in charge thereof, is not a passenger of the carrier operating such train.

2. ———: ———. To constitute one a passenger of the carrier on whose train such person is, it is essential that such person should be rightfully on such train or should be thereon with the knowledge or consent of the carrier, or its agent in charge of such train.

3. ———: ———: **TRESPASSER ON ENGINE: NEGLIGENCE.** In a suit by an administrator against a common carrier for damages for negligently causing the death of his intestate, it appeared that the deceased was a man eighteen years of age; that he rode on a locomotive engine by permission of the fireman thereof, agreeing with him to handle coal in consideration of being permitted to ride; that the conductor in charge of the train did not know of the deceased's presence on the engine; that the fireman told the deceased to get off the engine before the train reached McCook, for should he be found on the engine at that place he would be arrested; that no one attempted or threatened to put deceased off the engine; that the fireman did not tell the deceased to get off at the time and place he did; that there was no impending danger from a wreck, collision, or otherwise, which caused deceased to jump from the engine. The administrator pleaded, "when said engine was running at a rate of speed which made it dangerous to life to attempt to alight

therefrom," the deceased jumped from the engine and was killed, and was induced to make such jump by the fear of arrest should he be found thereon when the engine stopped. *Held,* (1) That the deceased was not a passenger of the carrier on whose engine he was riding; (2) that reasonable men can draw but one conclusion as to the character of the act of the deceased in leaping from the engine at the time and under the circumstances that he did, and that conclusion is that the act of the deceased was criminal negligence, and the proximate cause of his death; (3) that there was no evidence of negligence on the part of the carrier or its servants which the trial court would have been justified in submitting to the consideration of the jury; (4) that the trial court did not err in instructing the jury to return a verdict in favor of the carrier.

ERROR from the district-court of Nuckolls county. Tried below before MORRIS, J.

The facts are stated by the commissioner.

*Daniel F. Osgood,* for plaintiff in error, contending that the defendant is liable for damages, cited: *Hussey v. Norfolk S. R. Co.,* 98 N. Car., 41; *Benton v. Chicago, R. I. & P. R. Co.,* 8 N. W. Rep. [Ia.], 330.

*T. M. Marquett* and *J. W. Deweese, contra,* cited: *Virginia M. R. Co. v. Roach,* 34 Am. & Eng. R. Cases [Va.], 271; *Robertson v. New York & E. R. Co.,* 22 Barb. [N. Y.], 91; *Chicago & A. R. Co. v. Michie,* 83 Ill., 428; *Snyder v. Hannibal & St. J. R. Co.,* 60 Mo., 413; *Flower v. Pennsylvania R. Co.,* 69 Pa. St., 213; *Illinois C. R. Co. v. Meacham,* 19 S. W. Rep. [Tenn.], 232; *Osborne v. Kline,* 18 Neb., 351; *Reynolds v. Burlington & M. R. R. Co.,* 11 Neb., 192; *Atchison & N. R. Co. v. Loree,* 4 Neb., 450; *Burlington & M. R. R. Co. v. Wendt,* 12 Neb., 81.

RAGAN, C.

1. George W. Woolsey, administrator, sued the Chicago, Burlington & Quincy Railroad Company (hereinafter called

the "railroad company") in the district court of Nuckolls county for damages for negligently causing the death of his intestate, Harry Y. Woolsey. At the close of the evidence the jury, in obedience to an instruction of the court to that effect, returned a verdict for the railroad company. The court refused to set this aside and overruled a motion for a new trial, and the administrator brings the case here for review.

The evidence in the record shows, or tends to show, that the deceased at the time of his death was eighteen years of age, and on the day that he was killed he and a man named Guidici, his companion, by an agreement with the fireman of an engine pulling a freight train of the railroad company, that they, the deceased and Guidici, would break and shovel coal, got upon the engine of said freight train to ride; that such persons' presence on the train was without the knowledge or consent of the conductor in charge of the train; that they paid no fare, nor agreed to pay any, further than to assist the fireman in handling coal; that they were not in the employ of the railroad company, nor in any manner whatever connected with it or the train on which they rode; that as the train was approaching the city of McCook and running at a high rate of speed the fireman told the deceased to get off the train before it stopped at McCook, as, if he should be found on the train there, he would be arrested; no employe of the company put, attempted, or threatened to put the deceased off the train; there was no impending or threatening danger from a wreck or collision or otherwise at any time; that the deceased, while the train was moving at a high and dangerous rate of speed, said to his companion that he was about to jump off; that Guidici put his hand on his shoulder and advised him not to jump, but the deceased voluntarily jumped from the train and was killed. It is now said by counsel for the administrator that the deceased was a passenger on this train. We do not think that he

was a passenger within the meaning of any statute, rule or law, or decision with which we are acquainted. The deceased was fraudulently on this train. He did not go upon this train having a ticket or free pass, nor with the intention of paying his fare. His agreement with the fireman to shovel coal in consideration of a ride was a fraud on the company. It was the duty of the fireman to handle the coal himself. He could not put the corporation which he served under obligations to the deceased as a passenger by allowing him to ride upon the engine in consideration of his shoveling coal, nor for any other consideration, certainly without the presence of the deceased on the engine being known to the conductor in charge of the train. One may become a passenger of a common carrier without ever being actually on the train of the common carrier. It is not easy to lay down a rule defining what in all cases constitutes one a passenger of the carrier on whose train such person is, but it is essential to constitute one a passenger riding on a train of the carrier operating such train, that such person should be rightfully on such train, or should be thereon with the knowledge or consent of the carrier, or his agent in charge of said train. (*Union P. R. Co. v. Nichols*, 8 Kan., 505; *Toledo, W. & W. R. Co. v. Brooks*, 81 Ill., 245; *Chicago & A. R. Co. v. Michie*, 83 Ill., 427.)

2. If we should hold as a matter of law that the deceased at the time he met his death was a passenger on the train of the railroad company, the judgment here sought to be reversed would still have to be affirmed. By section 3, article 1, chapter 72, Compiled Statutes, 1893, railroad companies are made insurers of the safety of a passenger, except in cases where the injury of such passenger arises from his criminal negligence. The administrator pleaded in his petition, and the evidence supports the plea, that the decedent jumped from the train, "when said engine and cars were running at a rate of speed which [made it] dangerous to life to attempt to alight there[from]." All rea-

sonable men can draw but one conclusion as to the character of the act of the deceased in leaping from this train at the time and under the circumstances that he did, and that conclusion is that in so doing the deceased was guilty of criminal negligence. It has been many times said in this court, and so often ruled as to be no longer an open question, that "when a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury; but where the facts are such that all reasonable men must draw the same conclusion from them, the question is one of law for the court." (*Omaha Street R. Co. v. Craig*, 39 Neb., 601, and the cases there cited.) The only act of negligence charged against the railroad company is that the fireman told the deceased to get off the train before it reached McCook, as, if he should be found upon the train there, he would be arrested; but it is neither pleaded nor proved that the fireman told the deceased to jump off the train at the time he did jump. He told him to get off the train before it reached McCook. The deceased was not an infant of tender years, insane or idiotic, and, as before stated, he did not leap from this train in pursuance of any threat made to push him off if he did not jump, nor under the stress of a fear implanted in his mind by reason of an impending danger, wreck, or collision. There is no evidence in the record which shows that any employe of the train knew that the deceased was about to jump from the train at the time that he did. His companion, Guidici, who was a witness for the administrator, remained upon the train and advised the deceased that it was dangerous for him to leap therefrom, and advised him not to do so. There is in all this record not one word of evidence of any negligent act or omission of duty on the part of this railroad company that conduced to the death of the deceased. We must not be understood as deciding that because the deceased was not a passenger upon the train of the railroad

company, that because he was wrongfully and fraudulently on its train and a trespasser thereon, that therefore the railroad company would not be liable for negligence in injuring or killing him.    What we do decide is that the deceased, at the time he was killed, was not a passenger upon the train of the railroad company; and that the district court properly held that the uncontradicted evidence shows that he met his death, not from any negligence of the railroad company or any of its agents or servants, but from his own criminal negligence.    The law does not require of district courts to do useless things, and in this case, had the jury returned a verdict in favor of the administrator, it would have been the duty of the district court to have set such verdict aside; and in such a case the court was entirely right in directing the jury to find a verdict for the railroad company.    The judgment of the district court is

AFFIRMED.

POST, J., not sitting.