## WILLIAM A. CLINGAN V. DIXON COUNTY.

FILED NOVEMBER 11, 1905. No. 13,970.

Contributory Negligence: ERRONEOUS INSTRUCTION. Under the cir-
cumstances of this case the giving of an instruction as to con-
tributory negligence, which there is no evidence to support, *held*
prejudicial error.

ERROR to the district court for Dixon county: GUY T.
GRAVES, JUDGE. *Reversed.*

*McCarthy & McCarthy* and *J. V. Pearson,* for plaintiff
in error

*C. A. Kingsbury* and *F. A. McMaster, contra.*

LETTON, C.

This is an action to recover damages for injuries sus-
tained by reason of the negligence of the defendant county
in failing to maintain in proper repair a bridge across a
stream in Dixon county. At the trial a judgment was
rendered for the defendant, from which the plaintiff pro-
secutes error to this court.

The testimony shows that the accident happened upon
a bridge which was about 50 feet long, including the
plank approaches, and 14 feet wide. The floor of the
bridge was made of two-inch plank, but for a width of
8 feet in the center of the bridge there was a double floor
of two-inch plank, over which the travel was conducted,
leaving a space of about 3 feet on each side of the double
plank between that and the railing. On the morning of
the accident the plaintiff was riding upon horseback,
along the road leading to the bridge, and the last he
remembers about what occurred before the accident is that
he was riding at a walk at a point about 200 to 300 feet
before he reached the bridge; the next thing that he re-
members is when he recovered consciousness in the house
of Mr. Rahn, after the accident. Two neighbors living

near the bridge were informed by a boy that a man was lying upon the bridge, and, when they reached there, found the plaintiff trying to support himself upon the bridge railing, with blood upon his face, and found his horse standing in the creek beneath the bridge. The plaintiff seems to have been severely injured. The railing of the bridge was not broken, and the horse had apparently slipped through between the railing and the floor. One of the floor planks was broken outside of, and close to the edge of, the double planking; it was held to the joists by a single spike in such a manner that if one stepped upon the plank it would go down, and it would rise again when the pressure was removed, leaving a hole large enough to admit a horse's hoof. The morning was misty, and there was sufficient dirt upon the bridge so that scratches and marks, apparently made by the struggling of the horse, were found near the broken plank. The dirt approach to the bridge was washed out on one side to a depth of several feet, so as to leave but a narrow track for travel before approaching the bridge.

The plaintiff's theory is that this hole on the east side of the approach frightened the horse, which the plaintiff was riding, and caused it to seek the west side of the bridge where the broken plank was, and that the horse stepped into the hole, stumbled and fell, precipitating the plaintiff upon his head, so as to cause the injuries from which he suffered. From the testimony of the witnesses for the plaintiff as to the marks upon the bridge, and the hair and blood found thereon, together with the condition that the horse's hind legs were in as to being scraped and abraded, the jury may well have found that the injury was sustained by the horse stepping in the hole, causing him to fall and throw the plaintiff. On the other hand, there was testimony given by the defendant's witnesses, which would justify the conclusion that the horse had slipped upon the slippery floor and fallen before reaching the hole, and that the marks upon the bridge floor, and upon the horse itself, were caused by its struggles in en-

deavoring to arise, and in falling from the bridge between the railing and the floor. The evidence shows that the bridge was constantly being used by the public, and that, if the travel was confined to the portion of the bridge covered by the double planking, it was entirely safe.

The plaintiff complains of the giving of instruction numbered four requested by the defendant. This instruction is as follows: "The jury are instructed that a county is not liable to respond in damages because of every depression, inequality, or defect in the surface of its public highways and bridges, even though injury may result therefrom. It is only liable when it fails to keep its public highways and bridges in a reasonably safe condition for public travel, and it is not necessary that it should keep the entire width of its highways and bridges in good condition for travel, unless the public convenience and travel demand it; and if you find from the evidence that a sufficient width of the road and bridge at the point of the alleged injury was in a reasonably safe condition for public travel, and that the plaintiff could have passed over and along the same without injury, by the exercise of ordinary care and prudence, then you will find for the defendant." This instruction is substantially the same as one which was requested and refused in the case of *City of Lincoln v. Gillilan,* 18 Neb. 114. Instructions 1 to 10, which were given in the same case, enunciate the same principles, except that they omit that portion which relieved the city from keeping the entire width of the street in good condition for travel, unless the public convenience and travel demand it. The discussion of this instruction in that case is applicable to the case at bar. While, as a general abstract proposition, the statement as to there being no requirement that the entire width of highways and bridges be kept in good condition may be correct, still, under the circumstances of this case, we think it was misleading, and should not have been given, without some modification to fit the circumstances of the case. If the defect in the bridge was such that the county authorities,

by the exercise of reasonable care, could have remedied it, and was such that the bridge was dangerous for a person using ordinary care, then the county would be liable, and the question of whether or not the county was obliged to keep the entire width of the bridge or highway safe is not material. If there was nothing in the appearance of the bridge to suggest that it was unsafe to use the portion having only single planking, a person would not be compelled to remain upon the double planking, but might use any part of the bridge, provided he use ordinary care in the manner of his use. The presumption, which applies as well to the plaintiff as to the defendant, is that all parties acted with ordinary care, and this presumption must be overcome by evidence, either direct or circumstantial. *Spears v. Chicago, B. & Q. R. Co.*, 43 Neb. 720. *Swift & Co. v. Holoubek*, 60 Neb. 784. But the whole matter is for the jury to determine, and a verdict for either party might be supported under the evidence.

The plaintiff further complains of the giving of paragraph 6, which submitted the question of contributory negligence, upon the ground that there is absolutely no evidence of such negligence upon the plaintiff's part. The evidence fails to disclose any negligence whatever on the part of the plaintiff, and hence this instruction should not have been given. *Chicago, B. & Q. R. Co. v. Schalkopf*, 54 Neb. 448. Under the facts in this case, this was clearly prejudicial.

Plaintiff also urges that the verdict is contrary to law, and in support of this assignment argues that the statute, which renders counties liable to damages occurring by the failure to repair bridges, contains no limitation or reservation whatever, and that it was never meant to confine the liability of the county to injuries occurring within the narrow limits of the traveled way, and that a construction of the statute, which thus limits the liability of a county, is unauthorized. We do not agree with counsel in this view of the statute. To hold that every foot of the four rods prescribed as the width of highways in this state should be

made safe for public travel would, in the present stage of development of this commonwealth, place an onerous and unnecessary burden upon its people. When the county has exercised reasonable care and prudence in keeping its bridges in repair and suitable for the ordinary necessities of travel, it has fulfilled its duty. If its bridges are kept in a reasonably safe condition for travel in the ordinary mode, it cannot be held responsible for damages; if, however, a bridge is in such a defective condition that persons in the exercise of ordinary care traveling thereon are injured through defects, which reasonable care upon the part of the county might have obviated, the county is liable therefor. There is no evidence in the record to support the allegation that the defective condition of the highway before reaching the bridge contributed to the accident, and we have held in *Goes v. Gage County,* 67 Neb. 616, that a county under township organization is not liable for such defects. The evidence at the trial took an unnecessarily wide range, and we think that upon a new trial the inquiry should be narrowed to the material questions.

We recommend that the judgment of the district court be reversed and the cause remanded for a new trial.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be reversed and the cause remanded for a new trial.

REVERSED.